IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.                                                   CIV 16-0762 WJ/KBM
                                                      CR  15-1557 WJ

CIRILO OROZCO-SANCHEZ,

    Defendant-Movant.

## MEMORANDUM OPINION AND ORDER ADOPTING PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on the following: the Magistrate Judge's Proposed Findings and Recommended Disposition (PF&RD), filed September 3, 2018 (*Doc. 65*); Mr. Orozco-Sanchez's Objections to the Magistrate Judge's Proposed Findings of Fact and Recommended Disposition, filed September 27, 2018 (*Doc. 73*); the United States' Objections to the Court's Proposed Findings of Facts and Recommended Disposition, filed September 27, 2018 (*Doc. 74*); the United States' Response to Defendant's Objections, filed October 25, 2018 (*Doc. 79*); and Mr. Orozco-[Sanchez]'s Response to the Government's Objections to the Magistrate Judge's Proposed Findings of Fact and Recommended Disposition, filed October 29, 2018 (*Doc. 80*).[1] By Order of Reference entered July 5, 2016, this matter was referred to Magistrate Judge Karen B. Molzen to conduct hearings, if warranted, including

---

[1] Citations to "Doc." refer to docket numbers filed in Criminal Case No. 15-1557 WJ. For documents filed in only the civil case, the Court uses the full citation.

evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of this habeas action. *Orozco-Sanchez v. United States*, 16cv0762 WJ/KBM, Doc. 2 (D.N.M. July 5, 2016).

Judge Molzen held an Evidentiary Hearing on Cirilo Orozco-Sanchez's ("Mr. Orozco-Sanchez's") Section 2255 Motion on January 12, 2018. Mr. Orozco-Sanchez was present with his counsel, James Loonam, and the Court's certified staff interpreters provided simultaneous Spanish translation of the proceedings. Assistant United States Attorney Dustin Segovia appeared for the United States. The Court heard testimony from both Mr. Orozco-Sanchez and his trial counsel, Ms. Margaret Strickland. Post-evidentiary hearing briefing was completed by the parties on June 7, 2018, and Judge Molzen issued her PF&RD on September 3, 2018, wherein she recommended that Mr. Orozco-Sanchez's Section 2255 Motion be denied. Both parties filed Objections to Judge Molzen's PF&RD as well as Responses to Objections. While Mr. Orozco-Sanchez agreed with Judge Molzen's finding that Ms. Strickland's performance was constitutionally deficient, he objected to her determination that he had not established prejudice. *Doc. 73* at 1. Conversely, although the United States concurred with Judge Molzen's prejudice analysis, it objected to her finding that Ms. Strickland's performance was constitutionally deficient. *Doc. 74* at 1.

**A. Improper Guideline Calculations**

In her PF&RD, Judge Molzen determined that Ms. Strickland's representation of Mr. Orozco-Sanchez at the time he entered his Plea Agreement and pled guilty fell below the objective standard of reasonableness required by *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Judge Molzen noted that there was a consensus among the

2

parties and Ms. Strickland that Ms. Strickland had erroneously calculated Mr. Orozco-Sanchez's guideline range at 30 to 37 months imprisonment. Indeed, Ms. Strickland conceded that she miscalculated the guideline range but testified that she was unsure whether that miscalculation was a product of her ignorance of a 148-day sentence on a supervised release violation or a failure to correctly summate Mr. Orozco-Sanchez's period of incarceration.[2] Either way, she conceded deficient performance by failing to adequately advise Mr. Orozco-Sanchez of the consequences of his guilty plea.

Judge Molzen concluded that Ms. Strickland's performance failed to pass constitutional muster for two reasons: (1) because she failed to perform basic factual research that would have revealed Mr. Orozco-Sanchez's 148-day supervised release violation sentence and its dramatic impact on his guideline calculations; and (2) because her misstatements at the Plea Hearing regarding Mr. Orozco-Sanchez's guideline range, when coupled with reinforcement from Magistrate Judge Martinez and her failure to temper those statements with contemporaneous reminders that the range was a mere estimate, essentially amounted to promises that Mr. Orozco-Sanchez would fall into the 30-to-37-month guideline range. *Doc. 65* at 20-25.

The United States urges this Court not to adopt Judge Molzen's determination of deficient performance for the following reasons: (1) additional evidence, which it appended to its Objections, purportedly establishes that trial counsel did not fail to adequately investigate Mr. Orozco-Sanchez's criminal history; (2) the mere

---

[2] Along with its Objections to Jude Molzen's PF&RD, the United States submitted an affidavit from Ms. Strickland in which she attempted to clarify, based upon her post-Evidentiary Hearing review of Mr. Orozco-Sanchez's Pretrial Services Report, that her miscalculation of his guideline range was not, in fact, caused by a lack of information about his supervised release violation. *See Doc. 74*, Ex. B. As explained hereafter, the Court need not consider that affidavit.

3

miscalculation of a defendant's guideline range does not, in itself, render counsel's performance constitutionally deficient; and (3) trial counsel did not recklessly promise Mr. Orozco-Sanchez a particular sentence. *Doc. 74* at 3-4. In response, Mr. Orozco-Sanchez urges the Court to strike the post-Evidentiary Hearing affidavit of Ms. Strickland. *Doc. 80* at 5-10. He maintains that the United States has failed to explain why the statements contained in that affidavit were not relevant or available at the time of the Evidentiary Hearing. *Id.* at 10. Alternatively, Mr. Orozco-Sanchez asks the Court to return the case to Judge Molzen for further hearings and additional findings and recommendations. *Id.* at 8 (citing 28 U.S.C. § 636(b)(1)(C) (the district court "may recommit the matter to the magistrate judge with instructions").

Ultimately, because the Court adopts Judge Molzen's determination that Mr. Orozco-Sanchez suffered no prejudice from any deficient performance of counsel at the plea stage, it becomes unnecessary to either determine whether Ms. Strickland's performance was in fact deficient or to return the matter to Judge Molzen for further recommendations in light of the newly-submitted affidavit. *See United States v. Zajac*, 680 F. App'x 776, 783 (10th Cir. 2017) ("As a practical consideration, we need not examine both prongs [of the *Strickland* analysis] if one or the other is lacking.") Accordingly, the Court proceeds to the second prong of the *Strickland* analysis.

Under the prejudice prong, Judge Molzen concluded that Mr. Orozco-Sanchez failed to establish prejudice because he could not show that, absent ineffective assistance of counsel, he would have entered an open guilty plea or that the result of his criminal proceeding would have been more favorable. *See Doc. 65* at 31. The United States concurs with Judge Molzen's prejudice determination. Mr. Orozco-

Sanchez, in contrast, contends that Judge Molzen significantly undervalued the strength of his grounds for downward departure and variance as well as his resolve to plead guilty without a plea agreement. *See Doc. 73* at 2. He insists that he *has* established prejudice. *See id.*

Both parties and Judge Molzen have referenced the United States Supreme Court's decision in *Missouri v. Frye*, 566 U.S. 134 (2012) in conducting the *Strickland* prejudice analysis; their application of the legal framework, however, is not entirely consistent. Judge Molzen restated the prejudice framework as follows:

> The [*Frye*] Court in reasoned that, in order to establish prejudice, the defendant was required to show "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." It explained that it was also "necessary to show a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented." In other words, the Court indicated that, in assessing prejudice, courts must entertain how things would have played out had the defendant pursued an alternative plea option.

*Doc. 65* at 27 (citations omitted). Applying that framework to Mr. Orozco-Sanchez's case, Judge Molzen explained:

> Given the implausibility of his imperfect duress defense, and the sentencing judge's stated inclination not to sentence at the low-end of the guideline range when a defendant is in Criminal History Category VI, Mr. Orozco-Sanchez cannot show a "reasonable probability" that the end result would have been more favorable without the Plea Agreement. Notably, even if the factors enumerated by Mr. Orozco-Sanchez contributed to a low-end guideline sentence, which the Court considers more likely than a below-guidelines sentence, Mr. Orozco-Sanchez would have still received a sentence higher than 72 months. Moreover, a low-end sentence would only shave one month off of his high-end guideline exposure with the Plea Agreement. At the same time, he would risk a high-end guideline sentence that was 18 months higher than with his Plea Agreement. Under these circumstances, the Court simply cannot say that, properly advised, Mr. Orozco-Sanchez would have entered an open guilty plea.

5

* * *

> [Further,] [a]pplying the rationale of *Missouri v. Frye* in reverse – that is, considering whether the outcome of the proceeding would have been more favorable if Mr. Orozco-Sanchez declined the Fast-Track Plea Agreement and instead entered an open plea – the Court concludes that Mr. Orozco-Sanchez cannot demonstrate prejudice.

*Id.* at 31, 35. Thus, Judge Molzen was concerned both with whether a properly-advised Mr. Orozco-Sanchez would have entered an open guilty plea <u>and</u> with whether there was a "reasonable probability" that the final result would have actually been more favorable for him without the Plea Agreement.

Mr. Orozco-Sanchez, too, relied upon *Frye* to frame the issue of prejudice, explaining:

> [a] reasonable probability that, absent counsel's inadequate representations, a defendant would have rejected the plea agreement he accepted and chosen a different, potentially more favorable plea option also satisfies *Strickland's* prejudice prong. *Missouri v. Frye*, 566 U.S. 133, 148 (2012) (prejudice is established where ineffective assistance of counsel caused the defendant to miss out on a plea offer more favorable than the one the defendant ultimately accepted).

*Doc. 58* at 17. While he did not directly attack Judge Molzen's framing of the prejudice standard in his Objections, he subtly offered a competing one, focusing more narrowly on whether he would have chosen to pursue an open guilty plea if he had been properly advised. *See, e.g., Doc. 73* at 21. In other words, Mr. Orozco-Sanchez essentially relieves himself of the additional burden of demonstrating a "reasonable probability" that he would have received a more favorable result had he entered an open guilty plea. In his Objections, he relies upon *Lee v. United States*, 137 S. Ct. 1958 (2017), and emphasizes that to obtain relief, he need not show that everyone in his position would have chosen to enter an open plea, but only that he in particular would have made that

6

choice. *See Doc. 73* at 21. He submits that he has met *that* burden and that the Court must, therefore, overrule Judge Molzen's prejudice determination. *See id.*

This Court must determine, as a foundational issue, which standard is the proper prejudice standard in this context – the one advanced by Mr. Orozco-Sanchez in his Objections or the more demanding one applied by Judge Molzen in her PF&RD. Following the parties' lead, the Court's begins with the Supreme Court's analysis in *Frye*. There, the Court first determined that the defendant's attorney was ineffective when he failed to communicate an earlier plea offer to the defendant. *Frye*, 566 U.S. at 147. Under the second prong of the *Strickland* analysis, the Court considered whether the defendant was prejudiced by entering an open guilty plea rather than entering into a plea agreement. *Id.* at 137. As Judge Molzen noted in her PF&RD, *Frye* presented a legal question similar to the one presented by Mr. Orozco-Sanchez, but in reverse. *See Doc. 65* at 26. Critically, the Court in *Frye* reasoned that to establish prejudice, the defendant was required to show "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Frye*, 566 U.S. at 147.

More recently, the Supreme Court took up the issue of prejudice in the context of an attorney's ineffectiveness at the plea stage in *Lee*, the primary case from which Mr. Orozco-Sanchez derives his prejudice standard. In *Lee*, the parties agreed under the first prong of the *Strickland* analysis that the defendant received objectively unreasonable representation when his attorney advised him that he would not be deported if he pleaded guilty rather than proceeding to trial. *Lee*, 137 S. Ct. at 1962. Contrary to his counsel's advice, however, the defendant *was* subject to deportation

following his guilty plea. *Id.* at 1963. Thus, the issue before the Court was whether the defendant could establish that he was prejudiced by his counsel's constitutionally deficient representation at the plea stage. *Id.* at 1965.

The Court, in *Lee*, noted that the defense attorney's error had not affected the defendant's prospects at trial, prospects it described as "grim." *Id.* Instead, the error caused the defendant to enter a plea, which made him subject to certain deportation and caused him to forfeit his right to a trial. *Id.* The Court reasoned that the defendant could establish prejudice even without showing that he "would have been better off going to trial." *Id.* It clarified that a defendant need only show he would have been better off going to trial when his "decision about going to trial turns on his prospects of success and those are affected by the attorney's error . . . ." *Id.* In *Lee*, the Court considered whether counsel's error had caused a denial of a judicial proceeding altogether, drawing upon its prior decision in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), in which it held that there was a presumption of prejudice when the defense counsel's error results in the denial of an appeal. *Lee*, 137 S. Ct. at 1965. Just as the Court in *Flores-Ortega* described the denial of an appeal as a "denial of the entire judicial proceeding," the Court described the denial of a trial in the same manner. *See id.* at 1965. Ultimately, the Court stated the applicable prejudice standard in *Lee* as follows:

> When a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*Id.* (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

8

The Court then turned to the issue of whether the defendant in *Lee* could show that he would have, absent ineffective assistance, insisted on going to trial in lieu of pleading guilty. It declined to adopt a *per se* rule that a defendant without a viable defense cannot establish prejudice from the forfeiture of a trial. *Id.* at 1966. While the Court acknowledged that "a defendant facing . . . long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution," it explained that there are sometimes additional considerations beyond the likelihood of success at trial. *Id.* at 1967. Specifically, for the defendant there avoiding deportation was *the* determinative factor driving how he chose to proceed. *Id.* at 1966-67. The Court explained that if the defendant had received competent representation, he would have understood that accepting the plea agreement would "*certainly* lead to deportation," while going to trial would "*almost* certainly" lead to deportation. *Id.* at 1968. Under these circumstances, the Court determined that it would not be irrational for someone in the defendant's position to reject a plea offer in favor of trial. *Id.* at 1969.

Justice Thomas dissented in *Lee*, describing the prejudice standard applied by the majority as a "novel" one, which in his assessment did "not follow from [the Court's] precedents." *Id.* at 1969. Justice Thomas submitted that *Strickland* requires defendants to show a "reasonable probability" that, but for counsel's errors, the outcome of the prosecution would have been different. *Id.* at 1970. He noted that in *Frye*, the Court required the defendant to show not only that the he would have accepted the plea absent counsel's error, but also that the ultimate outcome of the proceeding would have been more favorable. *Id.* at 1971. He maintained that the majority in *Lee* had effectively

9

abandoned the *Strickland* prejudice standard, carving out a new, less stringent standard.

To the extent he suggests that the prejudice standard applied by the majority in *Lee* was novel, this Court agrees with Judge Thomas' assessment. In the Court's view, a narrower prejudice standard *was* crafted to address the unique circumstances at issue in *Lee*. There, counsel's ineffective assistance caused the defendant to forfeit his right to an entire judicial proceeding (i.e., a trial). Additionally, the more favorable outcome for the defendant in *Lee* was the one that made deportation less likely, not the one more likely to bring about an acquittal or shorter sentence.

By contrast, Mr. Orozco-Sanchez was not subject to the denial of an entire judicial proceeding. Rather, he was afforded both a plea hearing and a sentencing hearing, proceedings he would have likewise been afforded had he entered an open guilty plea. Moreover, for Mr. Orozco-Sanchez, the more favorable outcome was the one more likely to bring about a shorter sentence. Given these distinctions, the Court concludes that the applicable prejudice standard here is the one outlined in *Frye*. That is, Mr. Orozco-Sanchez must show: (1) that in the absence of ineffective assistance he would have pursued a different plea option *and* (2) that there was a reasonable probability that the ultimate outcome – the length of his sentence -- would have been more favorable. Putting aside the issue of Mr. Orozco-Sanchez's plea choice, the Court considers whether he has demonstrated a reasonable probability that he would have received a shorter sentence absent ineffective assistance of counsel.

As Judge Molzen explained in her PF&RD, Mr. Orozco-Sanchez's guideline range was 63 to 78 months imprisonment with his Plea Agreement. Without the Plea

10

Agreement, his range would have been significantly higher, because he would be ineligible for the 2-level reduction provided for in the Plea Agreement pursuant to U.S.S.G. § 5K3.1. Specifically, foregoing the Plea Agreement would have caused his sentencing guideline range to increase from 63 to 78 months to 77 to 96 months. Judge Molzen concluded there was a significant likelihood that, under the higher guideline range, Mr. Orozco-Sanchez would have received a sentence greater than the 72 months incarceration imposed by this Court. *Doc. 65* at 35. Following the Court's *de novo* review, it agrees that -- under the circumstances of this case and for the reasons outlined by Judge Molzen -- Mr. Orozco-Sanchez has failed to establish a reasonable probability that the end result of the criminal process would have been more favorable for him absent ineffective assistance of counsel.

In her PF&RD, Judge Molzen evaluated the grounds asserted by Mr. Orozco-Sanchez for a significant departure or variance, concluding that they were not compelling enough to establish prejudice. *See Doc. 65*. Mr. Orozco-Sanchez submits, however, that she undervalued the strength of these grounds. *Doc. 73* at 2. First, he suggests that the applicable sentencing guideline calculations "did not accurately measure the seriousness of Mr. Orozco's very stale [alien transportation] conviction." *Id.* at 4. He describes that offense as a 17-year-old conviction for which he served a "misdemeanor amount of time" and maintains that, while technically a correct application of the guidelines, the 16-level increase was nevertheless unfair. *Id.* at 4-7. According to Mr. Orozco-Sanchez, his criminal history circumstances made his guidelines range ripe for a downward departure or variance. *Id.* at 4-5.

11

This Court disagrees. While the staleness of a conviction may in certain circumstances warrant a significant downward departure or variance in an illegal reentry case, here, the totality of Mr. Orozco-Sanchez's criminal history weighs against granting a significant departure or variance. As outlined in Judge Molzen's PF&RD, that criminal history includes repeated felony violations of federal immigration law, including three convictions *after* the 1998 alien transportation conviction. Indeed, those numerous illegal reentry convictions caused this Court to sentence Mr. Orzoco-Sanchez toward the upper end of his guideline range despite a concession from the United States that a "low-end sentence would be sufficient." *See Doc. 28* at 2:17-19, 7:8-14. This Court previously admonished Mr. Orozco-Sanchez at sentencing: "You keep illegally reentering the United States. Your conduct shows that you have no respect for the laws of the United States." *Doc. 28* at 7:4-7. Mr. Orozco-Sanchez cannot demonstrate a reasonable probability that he would have received a significant departure or variance on the basis of overstated criminal history.

Mr. Orozco-Sanchez also maintains that adding two criminal history points for the commission of an offense while being on supervised release under U.S.S.G. § 4A1.1(d) was unfair, because U.S.S.G. § 5D1.1(c) advises against imposing supervised release when the defendant is likely to be removed after imprisonment. As the Court understands his argument, Mr. Orozco-Sanchez submits that he should never have been placed on supervised release following his incarceration for alien transportation, because he was likely to be removed following his period of incarceration for that offense. Application Note 5 to the applicable guideline explains, however, that even in cases in which the defendant is likely to be removed following imprisonment, the court

should still consider imposing a term of supervised release if it "determines it would provide an added measure of deterrence and protection based on the facts and circumstances of the particular case." U.S.S.G. § 5D1.1 n.5. Mr. Orozco-Sanchez's unrelenting attempts to illegally reenter the United States likely indicated that he was in need of additional deterrence. Once again, Mr. Orozco-Sanchez fails to show a reasonable probability that he would have received a significant departure or variance based upon the purportedly unfair addition of criminal history points for the commission of an offense while on supervised release.

Turning to Mr. Orozco-Sanchez's duress claim, the Court agrees with Judge Molzen's rationale and with her assessment that the Court would not likely find plausible Mr. Orozco-Sanchez's story of being kidnapped and forced to guide a group of illegal aliens into the United States. Mr. Orozco-Sanchez takes issue with Judge Molzen's conclusion that his guilty plea undermines his testimony that he entered the United States under duress. Judge Molzen found that "[t]he fact that he pled guilty in his previous immigration cases, representing that he was voluntarily present in the United States, undermines his claim that he only crossed the border under duress from cartels." *Doc. 65* at 29. Mr. Orozco-Sanchez notes that there is a distinction between a duress defense at trial and duress as a ground for a below-guidelines sentence. *Doc. 73* at 8. Conceding that he could not meet the third element for a viable duress defense, Mr. Orozco-Sanchez maintains that entering a guilty plea did not preclude him from obtaining a downward departure or variance on the basis of duress. But as the United States points out, Mr. Orozco-Sanchez admitted through the entry of the plea agreement that he "knowingly and voluntarily reentered the United States." *See, e.g.*,

13

*Doc. 12* at 4-5. An admission of a voluntary re-entry *does* run counter to a contention that he entered the United States because he was under duress from a drug cartel.

In her analysis of Mr. Orozco-Sanchez's duress claim, Judge Molzen referenced statements made by this Court at sentencing. In his Objections, Mr. Orozco-Sanchez argues that the Court's reaction to Mr. Orozco-Sanchez's allocution "is not a valid indication of the prospects for a well-presented duress departure or variance argument before an unknown judge." *Doc. 73* at 10. He goes on:

> whether Judge Johnson in particular would be impressed by Mr. Orozco's kidnaping version of events is not a relevant issue. Mr. Orozco had to make his plea decision before a district judge was assigned. . . . And the prejudice determination must be made "without regard for the 'idiosyncrasies of the particular decisionmaker.'"

*Doc. 73* at 11 (citing *Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985), in which the Court explained that predictions as to the outcome of a possible trial must be made objectively without regard for idiosyncrasies of the decisionmaker).

While it is true that Mr. Orozco-Sanchez had to make his plea decision before the undersigned judge was assigned to his case, the Court disagrees that its statements at sentencing *in this very case* are therefore irrelevant to the prejudice analysis. Where Judge Molzen was tasked with determining whether there was a reasonable probability of a more favorable sentencing outcome absent ineffective assistance, the sentencing judge's statements provided helpful guidance to the extent that they addressed his view of Mr. Orozco-Sanchez's case. For instance, as Judge Molzen noted, the Court responded to Mr. Orozco-Sanchez's telling of his kidnapping story with the following: "I can't control the circumstances in Mexico but you've been deported numerous times. You keep illegally reentering the United States. Your conduct shows that you have no

14

respect for the laws of the United States." *Doc. 28* at 7:4-7. The Court did not find Mr. Orozco-Sanchez's duress claim plausible at sentencing, nor does it find that claim plausible as now articulated by counsel. While perceived inclinations of the Court could be described as "idiosyncrasies" if made in the abstract, Judge Molzen here referred to specific statements made by the Court in support of the sentence given to Mr. Orozco-Sanchez. It was not error for her to consider these statements in her prejudice analysis.

Next, Mr. Orozco-Sanchez contends that his "Arizona supervised release revocation proceedings provide substantial evidence that competent advocacy on behalf of Mr. Orozco's duress departure or variance would have borne fruit." *Doc. 73* at 11. According to Mr. Orozco-Sanchez, the Arizona attorney who represented him in that supervised release revocation proceeding presented evidence about his alleged duress, seeking a fully concurrent sentence based in part on that ground. *Doc. 73* at 11 (citing *Doc. 48*, Att. E). Ultimately, the District of Arizona gave Mr. Orozco-Sanchez a sentence 16 months below the guideline-range bottom. *Doc. 48*, Att. A, at 5, Att. G. But, as Judge Molzen explained, the record does not specify why the court did so. *Doc. 65* at 30. Mr. Orozco-Sanchez insists that it must have been a result of testimony about his kidnapping; at the same time, he denounces speculation by Judge Molzen as to the reason for the variance. But the reasons offered by Mr. Orozco-Sanchez are equally speculative. Without the benefit of the District of Arizona's rationale, the sentence rendered in Mr. Orozco-Sanchez's supervised release revocation proceedings does not demonstrate prejudice in the outcome of his illegal reentry case in this District.

Finally, Mr. Orozco-Sanchez contends that Judge Molzen failed to account for his difficult childhood, which he suggests was another "fervent" ground for a downward

15

departure or variance. *Doc. 73* at 12. Though his childhood was indeed unfortunate, the Court disagrees that it would alter the calculus at a sentencing. After all, the Court was provided with information about Mr. Orozco-Sanchez's childhood and, yet, persisted with a sentence toward the upper end of the guideline range. Specifically, Ms. Strickland advised the Court that Mr. Orozco-Sanchez "suffered some severe childhood abuse and neglect which affected the way – affected his development and his ability to make decisions." *Doc. 28* at 3:4-7. Further, the Presentence Report, which the Court reviewed in advance of sentencing, described Mr. Orozco-Sanchez's childhood circumstances and indicated that he grew up in extreme poverty, often with very little to eat, his mother beat him with a rope daily, and his father was often absent and had a drinking problem. *Doc. 55* at 11-12.

Ultimately, because Mr. Orozco-Sanchez has not established a reasonable probability that he would receive a more favorable outcome with an open guilty plea than he did with his Plea Agreement, he has failed to satisfy *Strickland's* prejudice prong. As such, Mr. Orozco-Sanchez's claim of ineffective assistance of counsel at the plea stage will be denied.

### B. Failure to Appeal

Mr. Orozco-Sanchez also objects to Judge Molzen's determination that Ms. Strickland's failure to either file an appeal or consult with him about an appeal did not constitute ineffective assistance of counsel. He insists that he credibly asked Ms. Strickland to appeal and suggests that if she failed to understand his request, she is at fault. *Doc. 73* at 22. Essentially, he contends that Ms. Strickland was ineffective for not hearing his appeal request. Moreover, he maintains that a non-frivolous ground for

16

appeal triggered a duty to consult with him about an appeal, which Ms. Strickland failed to satisfy. *Id.* at 23 (citing *Flores-Ortega*, 528 U.S. at 480).

At the Evidentiary Hearing, Mr. Orozco-Sanchez testified that while he was still standing at the podium with Ms. Strickland following his sentencing, he "told her if she would be able to make – to appeal for me." *Doc. 56* at 21:7-8. Mr. Orozco-Sanchez explained that Ms. Strickland did not respond to his request. *Id.* at 21:9-10. He admitted that he did not know whether she heard the request, explaining that "she was taking these [interpreter] headsets, she was taking them as I was telling her." *Id.* at 21:20-22. For her part, Ms. Strickland testified that she did not have any recollection of Mr. Orozco-Sanchez requesting that she file an appeal. *Id.* at 98:10-12, 99:6-8, 114:1-3. Further, Mr. Orozco-Sanchez understood that he had 14 days within which to appeal. *Id.* at 21:14-17. However, during those 14 days he did not correspond with Ms. Strickland – by e-mail, phone call, or letter – to request that she file an appeal on his behalf. *Id.* at 114:1-16. Ms. Strickland testified that if Mr. Orozco-Sanchez had even hinted about the possibility of an appeal, she would have filed one. *Id.* at 114:17-20.

Based upon this testimony, Judge Molzen determined that Mr. Orozco-Sanchez did not successfully convey any request that Ms. Strickland file an appeal, even accepting his testimony that he attempted to do so. *Doc. 65* at 36. This Court adopts that finding and concludes that Mr. Orozco-Sanchez has indeed failed to establish that Ms. Strickland was ineffective by neglecting to follow his *attempted* request that she file an appeal. This does not end the inquiry, however, because a duty to consult regarding an appeal may still arise when: (1) the particular defendant reasonably demonstrates to

counsel that he is interested in appealing, or (2) a rational defendant would want to appeal. *See Flores-Ortega*, 528 U.S. at 480.

Here, Mr. Orozco-Sanchez persisted with his Plea Agreement – an agreement that waived his right to appeal or collaterally attack his conviction save for ineffective assistance for counsel – even after Ms. Strickland presented him with the option of withdrawing. Indeed, at the Evidentiary Hearing, the following exchange took place between Mr. Orozco-Sanchez and his counsel:

> A. . . . [Ms. Strickland] told me that she – we may want to continue the case and to do it later and to see if I would be able to get something less. It was because of my past history, because I had come again to this country.
> Q. Did you ask her to continue the case at that time?
> A. No.
> Q. Why not?
> A. I don't know. No. I just let it happen like that.
> Q. Did you ask her not to continue the case?
> A. I did not ask her to continue the case. I just wanted her to finish this because I just wanted to get out of this.

*Doc. 56* at 15-16. Mr. Orozco-Sanchez's testimony was consistent with that offered by Ms. Strickland. Ms. Strickland explained that she discussed with Mr. Orozco-Sanchez the option of putting off sentencing or withdrawing the plea, but he opted to proceed with his Plea Agreement intact. *Id.* at 94-95. She noted that he "wanted to go to sentencing. He was tired of sitting in jail and dealing with this." *Id.*

Notably, this testimony is indicative of a desire to end judicial proceedings, not to prolong them through appeal. Mr. Orozco-Sanchez ultimately received a sentence that was within the range provided in his Plea Agreement, and, although he was upset that the range was higher than Ms. Strickland first indicated, he did not communicate any desire to appeal his sentence following sentencing so far as Mr. Strickland knew. Under

18

the circumstances, the Court agrees with Judge Molzen's conclusion that Mr. Orozco-Sanchez did not reasonably demonstrate a desire to appeal.

Mr. Orozco-Sanchez maintains that a rational defendant would want to appeal, given the non-frivolous ground for doing so: an unknowing and involuntary plea. *Doc. 73* at 22-23. But the Court disagrees with the premise advanced by Mr. Orozco-Sanchez that he "had a good chance of receiving a lower sentence than the district court imposed" following an appeal. *Id.* at 23. Instead, the Court favors the premise advanced by Judge Molzen – that the risk of receiving a higher sentence outweighed the slim chance of receiving a more favorable result through resentencing. Given that the Plea Agreement *reduced* sentencing exposure, the Court cannot say that a rational defendant would have sought to invalidate it on appeal. Given the Court's conclusion herein that an open guilty plea would be unlikely to produce a lower sentence, it follows that Ms. Strickland had no duty to consult about an appeal absent some clear indication from Mr. Orozco-Sanchez that he wished to do so. Ms. Strickland's failure to consult with Mr. Orozco-Sanchez about the possibility of an appeal did not constitute deficient performance under *Strickland.*

### C. Conclusion

For these reasons, the Court concludes that Mr. Orozco-Sanchez has failed to establish that he was prejudiced by any deficient representation by Ms. Strickland at the plea stage. Further, he has failed to establish that Ms. Strickland's failure to file an appeal or to consult him regarding the filing of an appeal constitutes ineffective assistance of counsel.

Wherefore,

**IT IS HEREBY ORDERED** that Cirilo Orozco-Sanchez's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (*Doc. 23*) is hereby denied and his claims are dismissed with prejudice.

_____
CHIEF UNITED STATES DISTRICT JUDGE